UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEVON ANTHONY MORGAN,

        Plaintiff,

v.

ZEIGLER KALAMAZOO, LLC,
  d/b/a ZEIGLER CHRYSLER DODGE RAM,
AADVANCED ASSET RECOVERY AND
  TRANSPORT INCORPORATED, and,
BARRY S. YAKIM,

        Defendants.

_____/

No. _____

Hon. _____
U.S. District Judge


**COMPLAINT and JURY DEMAND**

**I. Introduction**

    1.    Defendant Zeigler Kalamazoo, LLC, d/b/a Zeigler Chrysler Dodge Ram (hereafter "Zeigler") (www.hzkalamazoocdr.com) sells motor vehicles to consumers in credit transactions, using retail installment sales contracts.

    2.    A typical credit transaction is initiated when a Zeigler employee helps the consumer complete a simple credit application. Zeigler then obtains the consumer's credit report. Zeigler then attempts *via* the internet, fax or other means to obtain the tentative approval of an investment company that specializes in purchasing motor vehicle retail installment sales contracts to purchase the contract from Zeigler and "fund" the deal. Funding usually takes place pursuant to pre-existing agreements

between Zeigler and various investment companies.  These agreements state the terms under which each investment company will purchase contracts from Zeigler.  The preliminary arrangement of the investment company to purchase a particular contract from Zeigler is merely conditional and will specify additional terms ("stipulations") which must be met before the investment company will actually purchase the contract from Zeigler.  Typical stipulations include a subsequent telephone interview of the consumer by an employee of the investment company, and verification of the consumer's residency, employment and income.

3.      Once Zeigler has received an investment company's tentative approval to purchase the contract, Zeigler tells the consumer that he or she has been "approved for financing."  If the consumer agrees to purchase a vehicle, a Zeigler employee prepares the retail installment sales contract and other form documents related to the transaction.  The consumer signs the documents and thereby becomes the vehicle's owner, taking delivery of the vehicle.

4.      Problems occur for Zeigler if it later finds itself unable to satisfy all of the stipulations required by the investment company and the investment company refuses to purchase the contract from Zeigler.  Although Zeigler's contract with the consumer contains no lawful provision that conditioned either the sale of the vehicle or Zeigler's extension of credit under the terms of the contract upon any investment company's purchase of the contract, Zeigler will sometimes refuse to honor Zeigler's contract with the consumer, which can result in an illegal "spot delivery" or "yo-yo" transaction. Zeigler may then coerce the consumer into providing additional paperwork, may require the consumer to provide a co-borrower, or may require the consumer to sign additional

2

contracts on different terms.  Alternatively or eventually, Zeigler will breach the contract and demand that the consumer return the vehicle to Zeigler, sometimes falsely accusing the consumer of stealing the vehicle or threatening to file a false police report and improperly involve law enforcement.  Ultimately, Zeigler will unlawfully repossess and convert the consumer's vehicle.

5.      In a widely distribute May 22, 1989 Opinion Letter, the Michigan Department of Commerce, Financial Institutions Bureau stated that in the Bureau's opinion, it is unlawful for a motor vehicle installment seller to condition a sale on the seller's subsequent success in selling the retail installment contract to a third-party purchaser of the contract.

6.      The Michigan Department of Insurance and Financial Services ("DFIS") also warns that once a motor vehicle loan is closed and the buyer takes possession of the vehicle, the dealer cannot rescind the contract or request the return of the vehicle for any reason. https://www.michigan.gov/documents/difs/FIS-PUB_5700_533705_7.pdf.   "Dealers are required to ensure all conditions related to the closing of an automobile purchase be met *prior* to the borrower's execution of the contract."   A copy of the document is attached as Exhibit A.

7.      The State of Michigan also warns consumers about spot delivery, stating: "[T]he dealer has the choice whether to assign the contract.  The dealer has sole control over the effort it will make to assign a contract. . . . A motor vehicle installment sale contract conditioned upon the contract's assignment to a finance company violates the [Motor Vehicle Sales Finance Act].  Such a provision is not enforceable. . . . [T]he

3

contract is <u>not</u> void.  It is legally enforceable.  You are still responsible for making the payments as required by the contract.  If the dealer requests that you return to sign a new contract, you are not required to do so."  The State of Michigan makes this consumer protection warning at:

http://www.michigan.gov/documents/cis_ofis_spotdeli_23752_7.pdf.

A copy of the document is attached as Exhibit B.

8.      Similarly, the Michigan Secretary of State Dealer Manual, § 3-3.4. states that "a finance contract is between the purchaser and the dealer.  Typically, the dealer assigns the Motor Vehicle Installment Sales Contract to a finance company and then places a lien on the vehicle's title to secure payment.  If the finance company subsequently rejects the loan contract after interest in the vehicle transfers to the purchaser, it becomes the dealer's responsibility to offer financing to the purchaser under the same terms (e.g., interest rate, payment schedule, etc.) as the original finance contract.  This may require that the purchaser make the payments directly to the dealer"  The manual expressly warns: *"It is a violation of state law to attempt 'repossession' of a vehicle after delivery or to change the terms of the finance contract if a finance company refuses the contract after a spot delivery."*  The Michigan Secretary of State Dealer Manual is available at:

http://www.michigan.gov/documents/sos/Dealer_Manual_Chapter_3_186402_7.pdf.

A copy of the document is attached as Exhibit C.

9.      Plaintiff Devon Anthony Morgan is a victim of Zeigler's unlawful spot delivery/yo-yo practices.  Many state and federal laws may be violated when a car dealer engages in this most unfair and deceptive practice.  Zeigler  has violated the

4

federal Truth in Lending Act, 15 U.S.C. § 1638, *et seq.*, the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.,* the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.,* Zeigler violated Michigan's Motor Vehicle Installment Sales Contract Act, M.C.L. § 566.301, *et seq.,* committed common law conversion and violated Michigan's Conversion Statute, M.C.L. § 600.2919a, as well as breached its contract with Mr. Morgan, and harming him in other ways, including unlawfully repossessing the car that Mr. Morgan purchased from defendant Zeigler even before Mr. Morgan's first payment was due.

10. Defendant Aadvanced Asset Recovery and Transport Incorporated was the company that unlawfully repossessed Mr. Morgan's car before that first payment was due. They committed a conversion and in wrongfully repossessing Mr. Morgan's car, that company and its owner violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.,* a federal law that prohibits debt collectors from engaging in abusive, deceptive, or unfair practices, because they had no right to repossess Mr. Morgan's car, but took it anyway.

**II Jurisdiction and Venue**

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

12. This Court has jurisdiction under 15 U.S.C. § 1640(e) of plaintiff's claims under the Truth in Lending Act.

13. This Court has jurisdiction under 15 U.S.C. § 1691e(f) of plaintiff's claims

5

under the Equal Credit Opportunity Act, including under 15 U.S.C. § 1691e(c) of plaintiff's claims for equitable and declaratory relief under that Act.

14.     This Court has jurisdiction under 15 U.S.C. § 1681p of plaintiff's claims under the Fair Credit Reporting Act.

15.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) of plaintiff's claims under the Fair Debt Collection Practices Act.

16.     Venue is appropriate in this judicial district for the reason that the pertinent events took place here.

**III Parties**

17.     Plaintiff Devon Anthony Morgan is a natural person, residing in the City of Kalamazoo in Kalamazoo County, Michigan.   Mr. Morgan is a "consumer" and "person" as those terms are defined and used in the FDCPA.

18.     Defendant Zeigler is a Michigan domestic profit corporation (ID # 801621704, old ID # D6749Q) licensed by the Secretary of State for the State of Michigan to sell motor vehicles at retail  (License # A003498)  and licensed by the Department of Insurance and Financial Services of the State of Michigan as a motor vehicle dealer originating installment sales contracts to customers purchasing motor vehicles in credit transactions.  As such, Defendant Zeigler is licensed by the State of Michigan as an installment seller.  (License # IS-0018126).  By statute, M.C.L. § 445.1539, and as a condition of licensing, Zeigler can be served through the Michigan Department of State, Compliance Division, 3rd Floor - Treasury Building, 430 West Allegan Street, Lansing, MI 48918.  Zeigler's resident agent for service of process is Daniel J. Sheid, 4201 Stadium Drive, Kalamazoo, Michigan 49008.  The registered office of Zeigler is 4201 Stadium Drive, Kalamazoo, Michigan 49008.

19.     At all times relevant hereto, Zeigler engaged in the sale of motor vehicles

to customers, regularly extended credit to customers who purchased motor vehicles, and regularly executed retail installment sales contracts subject to a finance charge or payable in four or more installments.

20.     Defendant Aadvanced Asset Recovery and Transport Incorporated (hereafter "Aadvanced") is a Michigan domestic profit corporation (ID No. 800626139, old ID No. 09774D).  The registered agent for Aadvanced is Barry S. Yakim, one in the same as defendant Barry S. Yakim, at the following street address: 29034 M-62 West, Dowagiac, Michigan.  The mailing address of the corporation's registered office is P.O. Box 914, Dowagiac, MI 49047.

21.     Defendant Aadvanced uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Aadvanced regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Aadvanced uses instrumentalities of interstate commerce and the mails in a business the principal purpose of which is the enforcement of security interests.  Aadvanced is a "debt collector" as the term is defined and used in the FDCPA.

22.     Defendant Aadvanced is owned, managed and operated by Defendant Barry S. Yakim, who is Aadvanced's President, Treasurer, Secretary and Director.

23.     Defendant Aadvanced is licensed (No. 2401001904) by the Sate of Michigan to collect consumer debts and engage in repossessions in Michigan through its Agency - Owner Manager Barry S. Yakim, one in the same as defendant Barry S. Yakim.  Aadvanced is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

24.     Defendant Barry S. Yakim (hereafter "Yakim") is an individual residing,

7

purportedly, at 54905 Sunset, Dowagiac, Michigan 49047.

25.    Defendant Yakim is the incorporator of defendant Aadvanced and is a member, manager and owner of that defendant.

26.    During all times pertinent hereto, defendant Yakim directly and indirectly participated in the efforts to collect the consumer debt described below in this Complaint.

27.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  See, *Kistner v. Law Offices of Michael P. Margelefsky*, *LLC,* 518 F.3d 433, 435-38 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions*, *LLC*, 847 F.Supp. 2nd 994, 1004-06 (W.D.Mich. 2012).

**IV Facts**

28.    On May 23, 2018, plaintiff Devon Morgan went to Zeigler for the purpose of purchasing a motor vehicle on credit.

29.    On the foregoing date, a salesman/employee of defendant Zeigler identified as Adam Bayliss (hereafter "Bayliss") showed Mr. Morgan a vehicle on the Zeigler sales lot that Mr. Morgan was interested in purchasing - a 2012 Dodge Charger, VIN 2C3CDXCT7CH287597.

30.     Bayliss asked Mr. Morgan questions and Bayliss completed a credit application with the information provided orally by Mr. Morgan.

31.     Zeigler accessed and obtained Mr. Morgan's consumer report (commonly known as a "credit report") from one or more of three national consumer reporting agencies.

32.     One or more Zeigler employees reviewed and used Mr. Morgan's consumer report to decide whether to sell Mr. Morgan a motor vehicle on credit.

33.     A Zeigler employee represented to Mr. Morgan that his credit application to purchase a motor vehicle from Zeigler on credit had been approved.

34.     Zeigler agreed to sell the Dodge Charger to Mr. Morgan on credit.

35.     Zeigler prepared numerous documents to be signed in connection with the transaction. Included in the documents was a retail installment sales contract ("RISC"). A copy of the RISC is attached hereto as Exhibit D.

36.     The RISC was signed by Mr. Morgan on May 23, 2018.

37.     The RISC was signed by Zeigler.

38.     When Mr. Morgan signed the RISC, he became legally obligated to accept the terms and credit arrangement stated in the RISC.

39.     The transaction involving the motor vehicle referred to above was primarily for personal, family or household purposes.

40.     Any resulting obligation of the plaintiff to pay money on the RISC was a "debt" as the term is defined and used in the FDCPA.

41.     Zeigler sold the Dodge Charger to Mr. Morgan on May 23, 2018.

42.     The credit sale of the Dodge Charger from Zeigler to Mr. Morgan was consummated on May 23, 2018, when Mr. Morgan signed the RISC and thereby became legally obligated to accept the terms and credit arrangement stated in the RISC.

43.    Zeigler is identified on the face of the RISC as the "Creditor-Seller" and as "we" or as "us".

44.    Mr. Morgan is identified on the face of the RISC as the "Buyer" and as "You."

45.     The RISC stated: "By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract".

46.    Zeigler had the option to assign and sell the RISC to a third party.

47.    The RISC did not obligate Zeigler to assign or sell the RISC to a third party.

48.    The RISC obligated Mr. Morgan to to pay Zeigler under the terms of the RISC, unless and until Zeigler exercised its option to assign and sell the RISC to a third party.

49.    Zeigler is identified on the face of the RISC as the entity to whom the debt from the transaction was initially payable, making Zeigler the creditor in the transaction.

50.    The RISC stated no condition that had to be satisfied before the RISC was enforceable by Zeigler, or any successor or assign.

51.    The RISC stated no condition that had to be satisfied before the RISC was enforceable by Mr. Morgan.

52.    The RISC contained no language that would make the credit sale of the Dodge Charger to Mr. Morgan contingent upon Zeigler's assigning and selling the RISC to a third-party finance company, investor or any other entity.

53.    The RISC contained no language stating that Zeigler would not be bound by the RISC if Zeigler did not exercise its option to assign and sell the RISC to a third-party finance company, investor or any other entity.

54.    The RISC contained no language requiring Mr. Morgan to provide further information to either Zeigler or to anyone else Zeigler might assign or attempt to assign

10

the RISC.

55.     Zeigler stated to Mr. Morgan that it intended to assign and sell the RISC to a company named on the RISC as "WELLS FARGO DLR SVCS" ("Wells Fargo").

56.     Zeigler attempted to assign and sell the RISC to Wells Fargo.

57.     Zeigler was unsuccessful in its attempt to assign and sell the RISC to Wells Fargo.

58.     Wells Fargo chose not to purchase the RISC from Zeigler.

59.     Zeigler attempted to assign and sell the RISC to at least six (6) other third-party investors, but was unsuccessful in doing so.

60.     The RISC included the following terms regarding Mr. Morgan's granting defendant Zeigler a security interest with the 2012 Dodge Charger's being collateral for enforcement of the RISC as follows: "YOUR OTHER PROMISES TO US:  c. You give us a security interest in: The vehicle and all parts or goods put on it."

61.     In connection with the transaction, Zeigler also prepared an Application for Michigan Title, Statement of Vehicle Sale (Form RD-108), dated May 23, 2018, that identified Mr. Morgan as the purchaser and stating Zeigler's delivery of the Dodge Charger to him that date.  The Form RD-108 was signed by Zeigler and by Mr. Morgan as purchaser.  A copy of the RD-108 is attached hereto as Exhibit E.

62.     Title and ownership to the 2012 Dodge Charger passed to Mr. Morgan at the moment the Application for Michigan Title - Statement of Vehicle Sale (Form RD-108) was signed by Mr. Morgan on May 23, 2018, without regard to whether the document was ever mailed by defendant Zeigler, or delivered by defendant Zeigler to the Michigan Secretary of State.  *Perry v. Golling Chrysler Plymouth Jeep, Inc.,* 477 Mich. 62, 65-67 (2007).

63.     In connection with the transaction, Zeigler prepared an Odometer Disclosure Statement dated May 23, 2018, which described the Dodge and which

11

named Zeigler as the transferor and Mr. Morgan as the transferee.  The Odometer

Disclosure Statement was signed by Zeigler and by Mr. Morgan.  The mileage indicated

on the Disclosure on that date was 96,762 miles.  A copy of the Odometer Disclosure

Statement is attached as Exhibit F.

64.     The State of Michigan issued to Mr. Morgan a Certificate of Title to the

Dodge Charger on May 30, 2018.  A copy of the Certificate of Title is attached as

Exhibit G.

65.     On or about May 23, 2018, Wells Fargo accessed and obtained Mr.

Morgan's consumer report (commonly known as a "credit report") from the national

consumer reporting agency named TransUnion.

66.     The retail installment sales contract specified the purchase price of the

2012 Dodge Charger in the amount of Fifteen Thousand Five Hundred ($15,500.00)

Dollars.

67.     The RISC provided for a down-payment by Mr. Morgan of Five Hundred

($500.00) Dollars, which Mr. Morgan made to defendant Zeigler .

68.     The RISC provided for Mr. Morgan's making monthly payments,

commencing on July 7, 2018, in the amount of Three Hundred Eighty-nine and 82/100

($389.82) Dollars to Zeigler .

69.     Pursuant to the execution of the RISC, the payment of the down-payment,

the execution of Form RD-108 - Application for Title, and defendant Zeigler's

statements by way of its salesman's assurances to Mr. Morgan of, "your car" and "your

vehicle" in reference to the 2012 Dodge Charger, Mr. Morgan was the vehicle's owner.

70.     Mr. Morgan was prepared to, and at all relevant times was willing to make

the payments on his car to Zeigler; as indicated above, Mr. Morgan's first payment

upon the vehicle was due on July 7, 2018.

71.     Following Mr. Morgan's purchase of the 2012 Dodge Charger and during

the course of its dealing with Mr. Morgan, defendant Zeigler misrepresented to Mr. Morgan that the retail installment sales contract contained a term or terms conditioning Mr. Morgan's purchase of the 2012 Dodge Charger upon the assignment of that contract to, or its purchase by, a third-party.

72.     Following Mr. Morgan's purchase of the 2012 Dodge Charger and during the course of its dealing with Mr. Morgan, defendant Zeigler misrepresented to Mr. Morgan that the retail installment sales contract contained a term or terms conditioning Mr. Morgan's purchase of the 2012 Dodge Charger upon Mr. Morgan's providing further information following the sale of the motor vehicle to him in the form of a paycheck stub.

73.     The foregoing misrepresentations and each of them were material to the credit transaction between Mr. Morgan and defendant Zeigler.

74.     Following Mr. Morgan's purchase of the 2012 Dodge Charger, defendant Zeigler repeatedly stated that it would not honor the retail installment sales contract with Mr. Morgan.

75.     Following Mr. Morgan's purchase of the 2012 Dodge Charger as described above, Mr. Morgan was entitled to exclusive possession of the 2012 Dodge Charger.

76.     On or about June 25, 2018, and prior to Mr. Morgan's first payment's becoming due upon the Charger, defendant Zeigler hired defendant Aadvanced Asset Recovery & Transport Incorporated to repossess the 2012 Dodge Charger described above.

77.     On or about June 25, 2018, defendant Aadvanced repossessed Mr. Morgan's 2012 Dodge Charger from 2203 Laureate Avenue, Kalamazoo, Michigan.

78.     Defendant Aadvanced billed defendant Zeigler for its repossession of Mr. Morgan's 2012 Dodge Charger.  A copy of the Invoice from defendant Aadvanced to

13

defendant Zeigler is attached as Exhibit H.

79.     Defendant Aadvanced stated in its Invoice (Exhibit H) to defendant Zeigler that its repossession of Mr. Morgan's 2012 Dodge Charger was an "involuntary repossession".

80.     The repossession of Mr. Morgan's 2012 Dodge Charger was involuntary and done without his permission or consent.

81.     The repossession of Mr. Morgan's 2012 Dodge Charger dispossessed Mr. Morgan of his property where there was no present right to possession of his property by defendants Zeigler or Aadvanced through an enforceable security interest, for, again, the reason that Mr. Morgan's first payment on the Charger was not due until July 7, 2018.

82.     The defendants took the 2012 Dodge Charger, causing Mr. Morgan to suffer humiliation, embarrassment and other injury.

83.     In taking from Mr. Morgan the 2012 Dodge Charger automobile, each of the named defendants and/or their employees and agents deprived Mr. Morgan of the use that automobile.

84.     Each of the defendants and/or their employees and agents took Mr. Morgan's 2012 Dodge Charger automobile without Mr. Morgan's consent and against his express wishes.

85.     Each of the defendants and/or their employees and agents took the 2012 Dodge Charger even though Mr. Morgan had communicated to the defendants that Mr. Morgan intended to keep that automobile.

86.     Each of the defendants and/or their employees and agents took the 2012 Dodge Charger even though Mr. Morgan had communicated to the defendants that he intended to abide by and enforce his contract with defendant Zeigler and keep the 2012 Dodge Charger.

87.     Each of the defendants and/or their employees and agents took the 2012 Dodge Charger from Mr. Morgan even though Mr. Morgan had communicated to defendant Zeigler that he intended to make his monthly payments as agreed in the retail installment sales contract.

88.     On or about July 13, 2018, as part of defendant Zeigler's unlawful repossession and acquisition of Mr. Morgan's 2012 Dodge Charger and in order to obtain what would appear to be legitimate title to the repossessed vehicle, defendant Zeigler, upon the certification and representations of Zeigler's employee, Traci Thompson - Accounting Clerk, submitted to the Michigan Department of State a Certification of Repossession (MI-SOS Form TR-10), a copy of which is attached as Exhibit I.

89.     Among other misrepresentations submitted to the Michigan Department of State, the Certification of Repossession (Exhibit I) contained the false declaration that the reason for defendant Zeigler's repossession of the 2012 Dodge Charger was a "default of a purchasing obligation and loan agreement" (Item 1 on Form TR-10) when, contrary to that declaration, there had been no default of a purchasing obligation or loan agreement.

90.     The Certification of Repossession (Exhibit I) submitted by defendant Zeigler contained the false declaration that notice was given to Mr. Morgan that the 2012 Dodge Charger "would be retained in full satisfaction of the obligation" (Item 4(a) on Form TR-10) when, contrary to that declaration, no such notice was ever given to Mr. Morgan.

91.     The Certification of Repossession (Exhibit I) submitted by defendant Zeigler contained the false declaration that a Certificate of Title to Mr. Morgan's 2012 Dodge Charger was not enclosed with the Certification of Repossession for the reason that defendant Zeigler and/or Traci Thompson - Accounting Clerk were "Obtaining a

copy" (Item 5 on Form TR-10) when, contrary to the declaration, neither defendant Zeigler, nor Traci Thompson - Accounting Clerk were obtaining a copy of the Charger's title.

92.    The Certification of Repossession (Exhibit I) submitted by defendant Zeigler contained the false declaration that the actual odometer mileage on the 2012 Dodge Charger was 96,762 miles (Page 1, Form TR-10) when, contrary to that declaration, the actual odometer mileage was more than 96,762 for the reason that the foregoing stated odometer mileage was the odometer mileage at the time of Mr. Morgan's purchase of the 2012 Dodge Charger and he had driven the Charger for more than one month's time before it was repossessed.

93.    The 2012 Dodge Charger was converted to defendant Zeigler's own use, as reflected in the screenshot of Zeigler's inventory of motor vehicles offered on the internet for sale by Zeigler on September 10, 2018, a copy of the webpage for which is attached as Exhibit J.

94.    The 2012 Dodge Charger was converted to defendant Zeigler's own use when defendant Zeigler, an automobile dealer, following the Charger's repossession, authorized, encouraged and permitted the Charger's being driven by a prospective customer or customers of defendant Zeigler.

95.    The 2012 Dodge Charger was converted to defendant Zeigler's own use when defendant Zeigler, an automobile dealer, and following the Charger's repossession, offered the sale of the Charger to a customer or customers and, in fact, subsequently sold the Charger to a customer or customers different from Mr. Morgan, profiting thereby.

96.    Defendant Zeigler directly benefitted and continued to benefit from the conversion of the Dodge Charger to their own use as they, following its repossession, displayed and offered for sale the 2012 Dodge Charger as inventory on the sales lot of

16

defendant Zeigler, a business that sells motor vehicles.

97.     When defendant Zeigler converted the 2012 Dodge Charger it had a fair market value of Fifteen Thousand five hundred ($15,500.00) Dollars.

98.     Mr. Morgan to his detriment relied upon the financial disclosures made by defendant Zeigler  in the retail installment sales contract.

99.     The unlawful acts of all of the defendants, caused Mr. Morgan to suffer substantial, actual damages.

100.    Defendant Zeigler did not provide Mr. Morgan with a timely written statement regarding the dealership's action on his application for credit or with a written statement of the reasons why defendant Zeigler denied an extension of credit or, alternatively, revoked an extension of credit.

**V Claims for Relief**

### Count 1 - Truth in Lending Act (TILA)

101.    Plaintiff Devon Morgan incorporates the foregoing paragraphs by reference.

102.    The TILA required defendant Zeigler as creditor to disclose as the "amount financed" the amount of credit of which plaintiff Devon Morgan as debtor had actual use.  The TILA defines "credit" as "the right granted by a creditor to a debtor to defer payments of debt or to incur debt and defer its payment."  The retail installment sales contract stated a specific "amount financed" in connection with the transaction between defendant Zeigler  and Mr. Morgan.

103.    The TILA defines "creditor" as the "person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(f)(2).  In this case, the retail installment sales contract named Zeigler .  Thus, Zeigler  was the *creditor* in the transaction.

104.    Zeigler  violated the TILA in its transaction with Mr. Morgan because the

17

RISC unconditionally represented that Zeigler had granted plaintiff credit on specified terms as stated in the TILA disclosures contained therein, when in fact that information was false, inaccurate and misleading because the credit granted by Zeigler in the transaction actually was illusory and (at least according to Zeigler) conditioned upon Zeigler's ability to sell the RISC to a third-party finance company, all as evidenced by numerous attempts to do so by defendant Zeigler.   Thus, Mr. Morgan never had actual use of the credit as represented by Zeigler  in the TILA disclosures contained in the retail installment sales contract.

105.   Zeigler violated the TILA in its transaction with Mr. Morgan because the RISC unconditionally represented that Zeigler had granted plaintiff credit on specified terms as stated in the TILA disclosures contained therein, when in fact that information was false, inaccurate and misleading because the credit granted by Zeigler in the transaction actually was illusory and (at least according to Zeigler) conditioned upon Zeigler's obtaining additional information from Mr. Morgan related to his employment and earnings, all as evidenced by numerous demands by defendant Zeigler.   Thus, Mr. Morgan never had actual use of the credit as represented by Zeigler in the TILA disclosures contained in the retail installment sales contract.

106.   Defendant Zeigler  violated the TILA by failing to comply with the disclosure requirements of 15 U.S.C. §§ 1631, 1632, and 1638, and Regulation Z, 12 C.F.R. §§ 226.17 and 226.18.

**Wherefore,** plaintiff seeks judgment against defendant Zeigler  for:

(a)     A declaratory judgment that Zeigler  has violated the TILA;

(b)     Actual damages pursuant to 15 U.S.C. § 1640(a)(1);

(c)     Statutory damages pursuant to 15 U.S.C. § 1640(a)(2);

(d)     Costs of this action, together with a reasonable attorney's fee, pursuant to 15 U.S.C. § 1640(a)(3); and,

(e)     Such further relief as the Court deems appropriate.

18

**Count 2 - Equal Credit Opportunity Act (ECOA)**

107.   Plaintiff Devon Morgan incorporates the foregoing paragraphs by reference.

108.   Plaintiff is an "applicant" as the term is defined in the ECOA, 15 U.S.C. § 1691a(b).

109.   Zeigler  is a "creditor" as the term is defined in the ECOA, 15 U.S.C. 1691a(e).

110.   Plaintiff Devon Morgan completed a credit application and applied to Zeigler  for credit in connection with the purchase of the 2012 Dodge Charger from Zeigler.

111.   Defendant Zeigler denied plaintiff credit and/or revoked plaintiff's credit, which denial and/or revocation constituted "adverse action" as the phrase is defined in the ECOA, 15 U.S.C. §1691(d)(6).

112.   Defendant Zeigler  failed to provide the plaintiff Devon Morgan with a notice of adverse action as required by the ECOA, 15 U.S.C. § 1691(d).

113.   Zeigler has never provided any consumer with a notice of adverse action when required by the ECOA, 15 U.S.C. § 1691(d).

**Wherefore,** plaintiff seeks judgment against defendant Zeigler  for:

(a)   A declaratory judgment that Zeigler  has violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(c);

(b)   Actual damages pursuant to 15 U.S.C. § 1691e(a);

(c)   Punitive damages in an amount not to exceed $10,000.00, pursuant to 15 U.S.C. § 1691e(b);

(d)   Costs of this action, together with a reasonable attorney's fee, pursuant to 15 U.S.C. § 1691e(d); and,

(e)   Such further relief as the Court deems appropriate.

## Count 3 - Fair Credit Reporting Act (FCRA)

114.    Plaintiff Devon Morgan incorporates the foregoing paragraphs by reference.

115.    Plaintiff is a "consumer" as the term is defined in the FCRA, 15 U.S.C. § 1681a(c).

116.    Defendant Zeigler  is a "person" as the term is defined in the FCRA, 15 U.S.C. § 1681a(b).

117.    Zeigler  took "adverse action" as the phrase is defined in the FCRA, 15 U.S.C. § 1681a(k), with respect to plaintiff Devon Morgan, based in whole or in part on information contained in a consumer report.

118.    Defendant Zeigler  wilfully failed to provide plaintiff with a notice of adverse action as required by the FCRA, 15 U.S.C. § 1681m, thereby violating 15 U.S.C. § 1681n.  In the alternative, defendant Zeigler negligently failed to provide plaintiff with a notice of adverse action as required by the FCRA, 15 U.S.C. 1681m, thereby violating 15 U.S.C. § 1681o.

**Wherefore,** plaintiff seeks judgment against defendant Zeigler  for:

(a)    A declaratory judgment that Zeigler has violated the Fair Credit Reporting Act;

(b)    Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) and/or § 1681o(a)(1);

(c)    Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

(d)    Punitive damages in an amount not to exceed $10,000.00, pursuant to 15 U.S.C. § 1681n(a)(2);

(e)    Costs of this action, together with a reasonable attorney's fee, pursuant to 15 U.S.C. § 1681n(a)(3) and/or § 1681o(a)(2); and,

(f)    Such further relief as the Court deems appropriate.

### Count 4 - Michigan Motor Vehicle Sales Finance Act (MVSFA)
### (Declaratory Relief - Defendant Zeigler)

119.    Plaintiff Devon Morgan incorporates the foregoing paragraphs by reference.

120.    Zeigler  is an "installment seller" and a "seller" as the terms are defined in the MVSFA.  Zeigler  is a "holder" as the term is defined in the MVSFA.  Plaintiff is an "installment buyer" and a "buyer" as the terms are defined in the MVSFA.

121.    The MVSFA states: "An installment sales contract shall be in writing, and shall contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold, and shall be signed by both the buyer and the seller."  M.C.L. § 492.112(a).

122.    The MVSFA states: "An installment sales contract shall not be signed by a party unless it contains all of the information and statements required by this act."  M.C.L. § 492.114(a).

123.    The MVSFA states: "An installment sales contract shall not contain a provision by which a buyer waives a right of action against the seller, holder, or other person acting on behalf of the holder for an illegal act committed . . . in the repossession of a motor vehicle . . . ."  M.C.L. § 492.114(d).

124.    The MVSFA states: "No act, agreement or statement by any buyer in any installment sale contract shall constitute a valid waiver of any provision of this act intended by the legislature for the benefit and protection of retail installment buyers of motor vehicles."  M.C.L. § 492.132.

125.    The MVSFA requires that each retail installment contract shall separately disclose the various terms of credit, including the motor vehicle's cash price, amount of down payment, unpaid cash price balance, cost of any insurance or travel emergency benefits procured by the seller, other necessary or incidental costs which the seller

21

contracts to pay on behalf of the buyer, principal amount financed, amount of the finance charge, the time balance and the amount and due date of each payment required.  M.C.L. § 492.113.

126.    Defendant Zeigler  did not comply with the disclosure requirement of the MVSFA because it represented to Mr. Morgan that it had unconditionally guaranteed to him on the terms specified in the RISC, when in fact, and according to Zeigler, the information was false, inaccurate and misleading because the granting of credit on the disclosed terms was conditioned upon defendant Zeigler's ability to sell the retail iinstallment sales contract to a third-party investor.

127.    Defendant Zeigler  did not comply with the disclosure requirement of the MVSFA because it represented to Mr. Morgan that it had unconditionally guaranteed to him on the terms specified in the RISC, when in fact, and according to Zeigler, the information was false, inaccurate and misleading because the granting of credit on the disclosed terms was conditioned upon plaintiff's satisfying Zeigler's demand for additional information to which Mr. Morgan had no obligation to Zeigler to provide.

128.    Defendant Zeigler  failed to disclose the finance charge to plaintiff Devon Morgan as required by the MVSFA because the purported extension of credit, according to defendant Zeigler, was conditional and, therefore, illusory.

Wherefore, plaintiff seeks judgment against defendant Zeigler  for:

(a)     A declaration that Zeigler  has violated the MVSFA by claiming the extension of credit to plaintiff was conditioned upon Zeigler's ability to sell the retail installment sales contract to a third-party investor.

(b)     A declaration that Zeigler's claim that it did not extend credit to plaintiff under the terms of the retail installment contract and/or that the extension of credit to plaintiff under the terms of the retail installment sales contract was conditioned upon a subsequent event, that is, that Zeigler's ability to

22

sell the retail installment sales contract to a third-party investor, was
unenforceable and a violation of the MVSFA.

(c)     An injunction prohibiting Zeigler  from further violations of the MVSFA;

(d)     Such further relief as the Court deems appropriate.

**Count 5 - Breach of Contract**

129.   Plaintiff Devon Morgan incorporates the foregoing paragraphs by
reference.

130.   Plaintiff entered into the retail installment sales contract with defendant
Zeigler with set terms regarding price, financing, payment and possession of the 2012
Dodge Charger.

131.   The foregoing contract terms were material to plaintiff Devon Morgan.

132.   The retail installment sales contract contained no language making the
contract conditional upon Zeigler's success in selling the contract to an investor or
other third-party.

133.   The retail installment sales contract contained non language making the
contract conditional upon Mr. Morgan's providing further information to be demanded
later by defendant Zeigler

134.   Alternatively, any alleged agreement between Zeigler  and plaintiff Devon
Morgan that contained language making the contract conditional upon Zeigler's
success in selling the contract to an investor or other third-party or conditional upon Mr.
Morgan's providing further information to Zeigler was unlawful and unenforceable.

135.   Plaintiff Devon Morgan performed all conditions required of him under the
retail installment contract.

136.   Zeigler  breached its contract with Mr. Morgan.

137.   Each breach of the contract was material.

138.   Plaintiff Devon Morgan has suffered loss as a result of Zeigler's breach of

contract.

Wherefore, plaintiff seeks judgment against defendant Zeigler for:

(a)     A declaratory judgment that Zeigler's practices constitute a breach of
        contract;

(b)     Actual damages;

(c)     Exemplary damages;

(d)     Costs;

(e)     Reasonable attorney's fees;

(f)     An order requiring defendant Zeigler to repair plaintiff Devon Morgan's
        credit history now that defendant Zeigler has followed through upon its
        repossession and/or caused excessive inquiries to appear in connection
        with plaintiff's purchase and finance involving the motor vehicle; and,

(g)     Such further relief as the Court deems appropriate.

### Count 6 - Michigan Uniform Commercial Code - Article 9

139.    Plaintiff Devon Morgan incorporates the foregoing paragraphs by
reference.

140.    Defendant Zeigler violated Article Nine of the MUCC, M.C.L.
§ 440.9101, et seq., when it took possession of plaintiff Devon Morgan's 2012 Dodge
Charger, contrary to the default and repossession provision remedies of the real
installment sales contract between the parties and Article 9 of the Uniform Commercial
Code, all occurring without any required accounting to him, notices regarding
disposition of the collateral, and other legal requirements imposed upon defendant
Zeigler.

141.    Zeigler violated the MUCC, M.C.L. § 440.1203, when it breached its
obligation of good faith by inducing plaintiff to sign the RISC by misrepresenting that
plaintiff had been approved unconditionally for financing, by falsely declaring plaintiff to

24

be in default of the contract, and by wrongfully repossessing plaintiff's vehicle.

142. Plaintiff Devon Morgan suffered loss as a result of defendant Zeigler's multiple violations of Article 9 of Michigan's Uniform Commercial Code.

**Wherefore,** plaintiff seeks judgment against defendant Zeigler for:

(a) A declaratory judgment that defendant Zeigler's practices violate the Michigan Uniform Commercial Code;

(b) Actual damages;

(c) Statutory damages of an amount of not less than the credit service charge, plus 10% of the principal amount of the debt, or the time-price differential plus 10% of the cash price, pursuant to the MUCC.

(d) Costs of this action, together with reasonable attorney's fees; and,

(e) Such further relief as the Court deems appropriate.

### Count 7 - Common Law Conversion and Statutory Treble Damages - Defendant Zeigler

143. Plaintiff Devon Anthony Morgan incorporates the foregoing paragraphs by reference.

144. At all times relevant hereto, the plaintiff had the exclusive right to the immediate possession of the 2012 Dodge Charger.

145. Defendant Zeigler by the actions of its agents and employees converted plaintiff's 2012 Dodge Charger.

146. Defendant Zeigler through the actions of its agents and employees, intentionally and knowingly converted plaintiff's 2012 Dodge Charger.

147. Defendant Zeigler through the actions of its agents and employees received and possessed plaintiff's 2012 Dodge Charger.

148. Defendant Zeigler through the actions of its agents and employees received and possessed, the 2012 Dodge Charger knowing it had been converted.

149.    The above-described conversion of the 2012 Dodge Charger was to defendant Zeigler's own use, Zeigler, having offered for sale the vehicle, having driven it around, and having now, as a seller of motor vehicles, sold the vehicle to a third-party.

150.    Defendant Zeigler refused to return the 2012 Dodge Charger to plaintiff upon his demand that they do so.

151.    Defendant Zeigler refused to return the 2012 Dodge Charger to plaintiff, knowing that the automobile had been converted.

152.    Plaintiff Devon Morgan was injured and has suffered loss as a result of the conversion of the 2012 Dodge Charger.

**Wherefore,** plaintiff seeks judgment against defendant Zeigler for:

(a)    A declaratory judgment that each of the defendant's practices constituted conversion of plaintiff Devon Morgan's 2012 Dodge Charger.

(b)    Actual damages for common law conversion, equal to the fair market value of the vehicle at the time of conversion.

(c)    Treble damages pursuant to M.C.L. § 600.2919a; calculated as three times the fair market value of the vehicle at the time of conversion;

(d)    Costs pursuant to M.C.L. § 600.2919a;

(e)    Reasonable attorney's fees pursuant to M.C.L. § 600.2919a; and,

(f)    Such further relief as the Court deems appropriate.

### Count 8 - Fair Debt Collection Practices Act - Defendants AADVANCED and Yakim

153.    Plaintiff Devon Morgan incorporates the foregoing paragraphs by reference.

26

154.    Mr. Morgan, a natural person, is a consumer as defined in the FDCPA.

155.    The debt in this matter was one that was primarily for personal, family and household purposes.

156.    Defendants Aadvanced and Yakim are each debt collectors as defined and used in the FDCPA, because they use "any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692(a) (6).

157.    Defendants Aadvanced and Yakim are also debt collectors for the reason that they are persons who use any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692(a)(6).

158.    Defendants Aadvanced and Yakim violated the FDCPA when they took "nonjudicial action to effect dispossession" in repossessing Mr. Morgan's Dodge Charge when there was "no present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692(f)(6)(A).

159.    Defendants Aadvanced and Yakim repossessed Mr. Morgan's Dodge Charger when there existed no enforceable security interest - Mr. Morgan's first payment had yet to come due.

**Wherefore,** plaintiff seeks judgment against defendants Aadvanced and Yakim, and each of them as follows:

      (a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

      (b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

      (c)    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

      (d)    A declaration that the practices of defendants Aadvanced and

Yakim, and each of them, violate the FDCPA in the manner described above; and,

(e)   Such other and further relief as appropriate.

**Count 9 - Common Law and Statutory Conversion -
Defendants Aadvanced and Yakim**

156.   Plaintiff Devon Anthony Morgan incorporates the foregoing paragraphs by reference.

157.   At all times relevant hereto, the plaintiff had the exclusive right to the immediate possession of the 2012 Dodge Charger.

158.   Defendants Aadvanced and Yakim by their actions of those of their agents and employees converted plaintiff's 2012 Dodge Charger.

159.   Defendants Aadvanced and Yakim  through the actions of their agents and employees, intentionally and knowingly converted plaintiff's 2012 Dodge Charger.

160.   Defendant Aadvanced and Yakim individually and  through the actions of their agents and employees received and possessed plaintiff's 2012 Dodge Charger.

161.   Defendant Aadvanced and Yakim through the actions individually and through the action of their agents and employees converted the 2012 Dodge Charger to their own use in operating a repossession business for profit, and transported and conveyed the 2012 Dodge Charger to defendant Zeigler in exchange for payment for their unlawful activity using the Charger.

164.   Plaintiff Devon Morgan was injured and has suffered loss as a result of the conversion of the 2012 Dodge Charger.

**Wherefore,** plaintiff seeks judgment against defendants Aadvanced and Yakim  for:

(a)   A declaratory judgment that each of the defendant's practices constituted conversion of plaintiff Devon Morgan's 2012 Dodge

28

Charger.

(b)     Actual damages for common law conversion, equal to the fair market value of the vehicle at the time of conversion.

(c)     Treble damages pursuant to M.C.L. § 600.2919a; calculated as three times the fair market value of the vehicle at the time of conversion;

(d)     Costs pursuant to M.C.L. § 600.2919a;

(e)     Reasonable attorney's fees pursuant to M.C.L. § 600.2919a; and,

(f)     Such further relief as the Court deems appropriate.

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: November 6, 2018                    /s/ Anthony J. Valentine
                                          Anthony J. Valentine
                                          Attorney at Law
                                          Attorney for Plaintiff
                                          Ste. 227, 29 Pearl Street, N.W.
                                          Grand Rapids, MI 49503
                                          (616) 288-5410
                                          *tonyvalentinelaw@gmail.com*